UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DIGITAL MOTORWORKS, INC,                  : Case No.: A08-CA-014-SS
a Delaware corporation                    :
            Plaintiff,                    :
                               :
      vs.                                 :
                               :
CREDIT ACCEPTANCE CORPORATION, a :
Michigan corporation,                     :
            Defendants                    :

**PLAINTIFF DIGITAL MOTORWORKS, INC'S APPENDIX OF FACTS
SUPPORTING ITS RESPONSE TO DEFENDANT'S MOTION TO STRIKE
REPORT AND EXCLUDE EXPERT TESTIMONY OF KEVIN WITT**

Digital Motorworks, Inc. ("DMI"), Plaintiff, hereby respectfully

submits the Appendix of Facts which supports its Response to Defendant's Motion

to Strike Report and Exclude Expert Testimony of Kevin Witt, and shows:

**I.   Attached Documents:**

1.     The following Affidavit is attached hereto and incorporated herein by

reference for all purposes: Kevin Witt of DMI.

2.     In addition, Plaintiff requests that the Court take judicial notice of the

affidavit of Ronald Booth, which was filed under seal in connection with

the Motion for Summary Judgment filed in this matter by Plaintiff.

**II. Facts and Sources**

| | FACT | SOURCE |
|---|---|---|
| 1 | Digital Motorworks, Inc. ("DMI") provides a service using software it developed called InfoIQ which extracts data from (in this case, car dealers') computer systems for the purpose of uploading this data to a customer's computer | See Affidavit of Kevin Witt, paragraph 5 |

|   | FACT | SOURCE |
|---|------|--------|
|   | system. |   |
| 2 | On December 8, 2006, Credit Acceptance Corporation's ("CAC") employee John Soave wrote an e-mail which states: "Item 1: Using One Data Table per Day (as opposed to one data table per day per dealer)" and "Credit Acceptance and DMI will use one data table per day" | Booth Affidavit filed under seal in support of motion for summary judgment, paragraph 15, Exhibit F |
| 3 | The parties' agreement required CAC to complete User Acceptance Testing before the InfoIQ™ services could be fully implemented. The Statement of Work which is part of the agreement expressly provides that CAC had to perform its User Acceptance Testing within five business days, or by January 8, 2007.  CAC missed the deadline, and did not sign off on User Acceptance Testing until February 2, 2007. | Ronald Booth Affidavit, paragraph 7, Exhibits "A" and "B". |
| 4 | The InfoIQ™ Service Agreement in issue, in section 2.2 further required CAC to provide assistance with transitioning dealers to the InfoIQ™ system in an express contractual clause, and yet CAC did not provide the assistance required of CAC | Affidavit of Ronald Booth, paragraph 8 and Exhibit "C" to that Affidavit |
| 5 | Kevin Witt is the Director of Engineering for Digital Motorworks, Inc. He has been designated as an expert and a factual witness in this matter. | Affidavit of Kevin Witt, paragraph 1. Designation of Mr. Witt and summary of his testimony, as well as Mr. Witt's report, attached as exhibits to his affidavit. |
| 6 | Kevin Witt oversees DMi's software program known as InfoIQ™ | Affidavit of Kevin Witt, paragraphs 1 and 5 |
| 7 | Kevin Witt's testimony as an expert witness will address the capabilities of the InfoIQ™ software, including its technical functions and ability to do mapping and filtering | Affidavit of Kevin Witt, paragraph 5 |
| 8 | Kevin Witt has a degree from Rice University in Computer | Affidavit of |

| | | FACT | SOURCE |
|---|---|---|---|
| | | Engineering | Kevin Witt, paragraphs 2-3 |
| 9 | | Kevin Witt has over thirteen years experience in computer software and technology positions, including software development, software architecture and the deployment of software in customer environments, and software and technology delivery | Affidavit of Kevin Witt, paragraphs 2-3 |
| 10 | | Kevin Witt has worked for DMi since August 2006 and oversees a team of seventy five people responsible for the deployment and design of the InfoIQ™ software at issue in this case | Affidavit of Kevin Witt, paragraph 2 |
| 11 | | In his role as a Director of Engineering for Digital Motorworks, Inc., Kevin Witt works day to day with the software known as InfoIQ™, and is directly familiar with its design, its operation, its capabilities, and its operation in data extraction for customers of Digital Motorworks, Inc., as well as customer support and quality assurance issues. | Affidavit of Kevin Witt, paragraph 1 |
| 12 | | Kevin Witt is a regular employee of Digital Motorworks, Inc. and is not in the business of acting as an expert witness | Affidavit of Kevin Witt, paragraph 4 |
| 13 | | Mr. Witt intends to testify about the InfoIQ™ product, what it is, and what it does | Affidavit of Kevin Witt, Exhibit "C" and paragraph 4 |
| 14 | | Kevin Witt's report, on page 5, point (a), addresses the way in which milestones for implementation of the product requires cooperation from the customer. This testimony is based upon his technical knowledge and personal observation of the product. | Affidavit of Kevin Witt, Exhibit "C" and paragraph 6 |
| 15 | | In order for a dealer's data to be extracted by the InfoIQ™ software, the necessary information about the dealer must be provided to Digital Motorworks, Inc.  This information includes log-in ID's and passwords | Affidavit of Kevin Witt, paragraph 6 |
| 16 | | In reaching his opinion, Kevin Witt did not rely upon legalities but rather upon his direct knowledge and experience with the InfoIQ™ software | Affidavit of Kevin Witt, paragraphs 7 and 11 |
| 17 | | On page 5 of his report, paragraph (b), Kevin Witt explains that the InfoIQ™ product guide states that "the vehicle inventory product places all available records into a single export file" | Affidavit of Kevin Witt, paragraph 8 |
| 18 | | Kevin Witt states on page 5 of his report, paragraph b, that | Affidavit of |

| | | FACT | SOURCE |
|---|---|---|---|
| | | creating a way to split the export files upon delivery is a trivial effort. | Kevin Witt, paragraph 9 |
| 19 | | Kevin Witt has direct experience in creating computer applications which include routines to split files | Affidavit of Kevin Witt, paragraph 9 |
| 20 | | Kevin Witt's testimony will be based upon his technical experience, and his personal awareness of the effort required to split files upon delivery. | Affidavit of Kevin Witt, paragraph 9 |
| 21 | | On page 5 paragraph (c) of his report, Kevin Witt discusses the InfoIQ™ system's ability to apply filters | Affidavit of Kevin Witt, paragraph 10 and Exhibit "C" |
| 22 | | On page 5, paragraph (d) of his report, Kevin Witt addresses the ability of the InfoIQ™ software to deal with "multiple rooftops." | Affidavit of Kevin Witt, paragraph 10, and Exhibit "C" |
| 23 | | Kevin Witt is able to testify about the InfoIQ™ software's ability to apply with filters and deal with "multiple rooftops" because of his direct familiarity with the software and its capabilities, which are further documented in the product user guide | Affidavit of Kevin Witt, paragraph 10 and Exhibit "C" |
| 24 | | Kevin Witt reached his opinions by applying techniques utilized by computer software engineers, including (a) personal knowledge of the structure of the software; (b) personal knowledge of the implementation of the software; (c) knowledge of the principles of software engineering; (d) personal observation of the software in action and in development; (e) a detailed familiarity with how the software works; and (f) an awareness of the computer programming industry through hands on experience | Affidavit of Kevin Witt, paragraph 19; see also Witt Affidavit paragraph 16 Depositon of Kevin Witt attached to the Defendant's Motion to Exclude, page 40, lines 9-10 |
| 25 | | The Product Guide made part of the agreement at issue in this case provides that data is transmitted together in one file rather than in one file for each dealer | Affidavit of Kevin Witt, paragraph 13(a) and Exhibit "C" |

|   | FACT | SOURCE |
|---|------|--------|
| 26 | The Software Requirements Specification provided for the contract also uses a file naming convention consistent with one data file rather than one file per dealer | Affidavit of Kevin Witt, paragraph 13(a) and Exhibit "C" |
| 27 | The InfoIQ™ software can and does permit filtering of data | Affidavit of Kevin Witt, paragraph 13(b) |
| 28 | The InfoIQ™ software can and does handle multiple rooftops for clients | Affidavit of Kevin Witt, paragraph 13(c) |
| 29 | When a DMi customer provides an accurate bulk transfer list along with any desired filters, the InfoIQ™ software can support data extraction on an expedited schedule | Affidavit of Kevin Witt, paragraph 13(d) |
| 30 | The InfoIQ™ software can be used to convert a complete bulk transfer list to InfoIQ™ in a short period of time | Affidavit of Kevin Witt, paragraph 14 |
| 31 | The InfoIQ™ system can perform data extraction and pull data from dealers so long as CAC or the dealer provided the necessary information | Affidavit of Kevin Witt, paragraph 15 |
| 32 | There is no universal industry rule about which filters a particular dealer might wish to apply to "filter out" the data from the extraction.  Rather, there is a variation among dealers regarding fields of data to be extracted. | Affidavit of Kevin Witt, paragraph 15 |
| 33 | InfoIQ™ can map multiple rooftop dealers | Affidavit of Kevin Witt, paragraph 15 |
| 34 | InfoIQ™ provides an exported file of extracted data to customers in a format set forth in the agreements and product guide | Affidavit of Kevin Witt, paragraph 17 |
| 35 | Kevin Witt's opinions are based on knowledge derived from his direct experience with the InfoIQ™ software, and from his training, education and experience in software engineering. | Affidavit of Kevin Witt, paragraph 18 |

Respectfully submitted,

Robert H. Nunnally, Jr.
TX SBN 15141600
Ryan H. Anderson
TX SBN 24059380
Wisener ✶ Nunnally ✶ Gold, L.L.P
625 W. Centerville Road, Suite 110
Garland, Texas 75041
Phone: 972 840 9080
Facsimile: 972 840 6575
Email: robert@wnglaw.com

## Certificate of Service

I hereby certify that on January__, 2009 a copy of Digital Motorworks, Inc.'s Appendix of Facts which supports its Response to Defendant's Motion to Strike Report and Exclude Expert Testimony of Kevin Witt was served on Rob Ramage, Dykema, Gossett, PLLC, Comerica Bank Tower, 1717 Main Street, Suite 2400, Dallas, Texas 75201 via CMRRR.

Robert H. Nunnally, Jr.

# Affidavit of Kevin Witt

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DIGITAL MOTORWORKS, INC,                    :   Case No.: Case No.: 1:08-cv-0014-SS
a Delaware corporation                      :
                         Plaintiff,         :
                                            :
          vs.                               :
                                            :
CREDIT ACCEPTANCE CORPORATION, a :
Michigan corporation,                       :
                         Defendants         :
_____     :

### Affidavit of Kevin Witt in Opposition to Defendant's Motion to Strike Report And Exclude Testimony of Expert Kevin Witt

Came before me Kevin Witt, who, being duly sworn, did upon his oath attest:

1. "I am Kevin Witt. I am employed by Digital Motorworks, Inc. as its Director of Engineering. I have personal knowledge of the facts to which I attest. I acquired my personal knowledge in my role as Director of Engineering for Digital Motorworks, Inc. I am personally familiar with the capabilities of the InfoIQ product created by Digital Motorworks, Inc. through my personal involvement with that product, including my direct familiarity with the operation of this product.  In my role as a Director of Engineering for Digital Motorworks, Inc., I work day to day with the software known as InfoIQ, and am directly familiar with its design, its operation, its capabilities, and its operation in data extraction for customers of Digital Motorworks, Inc.

2. My professional experience and education is as follows:

**Professional experience:**

- August 2006 to Present, Director of Engineering at Digital Motorworks Inc.
  - o  Responsible for the technology delivery and software R&D organization at DMi, the largest provider automotive retail data services in North America. This organization consists of approximately 75 people spread across software development, enterprise architecture, business/data analysis, level 2 and level 3 support, database administration, system administration, quality assurance, and project management roles. Collectively, the group owns the development and maintenance of a portfolio of product, client-custom, dealer facing, and internal facing solutions that are primarily based on a web-based Java and Oracle application stack, but also include .NET thick client applications, web services, mobile apps, and the Microsoft WF framework.

- June 2005 to August 2006, Software Architect at Dell Inc.
  - o  Application architect responsible for several mission critical front-office automation applications in Dell's Global E-Business Management I/T portfolio, including applications responsible for international integration and processing of billions of dollars in small business and consumer loans provisioned through Dell Financial Services and other partner banks.

- September 2003 to June 2005, Technical Architect at GTECH Corporation
  - o  Developed new line of interactive gaming products for GTECH, the world's leader in computerized lottery gaming systems.  Customers included:

- State of Kansas Lottery

- Veikkaus Oy (Finland National Lottery)

- Camelot Interactive (UK National Lottery)

- October 1998 to September 2003, Technical Delivery Owner at Trilogy Inc.

  o Technical lead for Trilogy enterprise e-commerce customer engagements (including product deployment and customer application design and development) at Lands' End, Prudential, NCR, Alltel, Goodyear, and others. Four of the systems I was responsible for were highlighted in FORTUNE magazine as customer testimonial advertisements.

- May 1995 to October 1998, Compaq Computer Inc. (now Hewlett-Packard)

  o Worked as system software engineer and technical lead on product software development team in the Enterprise Computing Group at Compaq that was responsible for the ProLiant and ProSignia line of Intel-based servers.

**Education**

- BSEE – Computer Engineering, Rice University, Houston TX, 1996

3. My education and experience directly relates to my work on the InfoIQ product. A significant part of my recent experience is my work on the InfoIQ product itself, including being involved in the design of the software. I also supervise a team of personnel who handle technical concerns and issues with the software, so that I am personally familiar with the software's operations in the field.

4.  I am a regular employee of Digital Motorworks, Inc. who is not in the business of acting as an expert witness. This case is the first case in which I have been testified as an expert witness. I attach as Exhibit "A" and incorporate herein an excerpt from the expert disclosure which named me as an expert witness. The expert disclosure advises that I will testify as to the characteristics of the InfoIQ product. I attach as Exhibit "B" and incorporate herein an excerpt from the second supplemental disclosure which further described the matters on which I will testify. I attach as Exhibit "C" and incorporate herein a report I drafted which summarizes my opinions in this matter.

5.  One matter about which I intend to testify as an expert witness is an overview of the product as set forth in pages 4-6 of my report. I intend to describe for the fact-finder the way in which the InfoIQ product functions, and to explain its technical functions to the fact-finder. I am advised that Credit Acceptance Corporation has raised issues about the ability of the InfoIQ product to map and filter data from the automobile computer dealer management systems from which it extracts data. I may explain that the InfoIQ product can do the mapping and filtering. DMi's InfoIQ Vehicle Inventory product is a technology solution hosted by DMi using software created by DMi with which I am personally very familiar because I am the person who oversees its technological development. I am familiar with how it works, and of its capabilities, not only from a user perspective but also from a software design perspective. The InfoIQ software solution allows its customers to subscribe to a data publication that contains vehicle inventory data collected on behalf of its customers from their participating dealers. The InfoIQ software permits Digital Motorworks, Inc. to perform data extraction from automobile dealers and export it to customers such as Credit Acceptance Corporation.

6.  On page 5, point (a), I address the way in which milestones for implementation of the product requires cooperation from the customer. In this vein, my testimony would describe to the fact-finder how the product is implemented. In order for a dealer to be extracted by InfoIQ, the information about the dealer necessary to arrange for the extraction from the dealer, must be provided to Digital Motorworks, Inc. In reaching this opinion, I did not rely upon the legalities of the agreement, but instead upon my direct experience and professional understanding of the way that InfoIQ works. Using the InfoIQ software, Digital Motorworks can move data (See page 4 of my report) and then export ("explore" on page 5 of my report) to the customer. On page 4 of my report, I discuss how Digital Motorworks can "auto-pull" (or connect) to the dealer's system and automatically extract the data on a repetitive basis. In point (a) of page 5, I discuss that this process requires the cooperation of the customer. As I explained in my deposition, this required cooperation includes access to the necessary dealer information, including log-in ID's and passwords, to permit the connection by Digital Motorworks, Inc. to the dealer's computer dealer management system.

7.  My testimony regarding the necessary cooperation is not a matter of legal analysis, which I will leave to others. It is instead a functional, technical requirement in order to get a customer's dealers onto the InfoIQ system. I will explain to the fact-finder that without the necessary log-ins and passwords, as well as the other required information, InfoIQ deployment cannot occur. This is based upon my direct knowledge and experience with the product, and with its capabilities, and not upon any speculation outside of my field of expertise.   I attached the User Product Guide for InfoIQ to my report, which includes at

page 13 a description that the product acquires data from ADP and Reynolds and Reynolds users by connecting to the system with a modem dial or telnet connection. I will explain that this technical requirement is necessary as a matter of the design of InfoIQ. Thus, the contention that my testimony as to point (a) on page 5 of my report is a legal conclusion is inaccurate.

8.  On page 5 of my report, paragraph (b), I explain that page 29 of the InfoIQ product guide states that "the vehicle inventory product places all available records into a single export file". In this testimony, I, as the Director of Engineering for the company that prepared the InfoIQ product guide, will explain that this InfoIQ product guide provides that "The Vehicle Inventory product places all available records into a single export file". In making this explanation, I will be testifying as a person familiar with the InfoIQ product and with the export file from a technical perspective.

9.  On page 5 of my report, paragraph b, I also express the opinion that creating a way to split the export files upon delivery is a trivial effort. I have direct experience in creating computer applications which include routines to split files. My testimony will be based upon my technical experience, and my personal awareness of the effort required to split files upon delivery. As I explain in my deposition, the cost is not significant in relation to the product. I have the experience as a software professional working on the matters in issue to permit me to make express this opinion.

10. On page 5, in the (c) paragraph of my report, I discuss the InfoIQ system's ability to apply filters. This was placed in issue by the Counterclaim in this matter, which inaccurately claims that InfoIQ cannot provide filters. Similarly, paragraph (d) on page 5 of my report addresses the ability of the software to deal with "multiple rooftops". I opine

in that paragraph about the ability of InfoIQ to accommodate multiple rooftops. I am able to opine about these matters because I am directly familiar with InfoIQ and its technical capabilities, which are further documented in the user guide for the product.

11. The opinions I intend to offer are not legal analyses or matters outside my day-to-day competence and expertise. They are instead matters which address how InfoIQ software works, which knowledge is part of my day-to-day job experience, and something for which my education and experience makes me qualified to address.

12. I am advised that the motion to exclude my testimony questions the assumptions that I use in my report. However, my assumptions in this matter are derived from the nature of the product. I reviewed the Answer and Counterclaim filed by Credit Acceptance Corporation. I noted that Credit Acceptance Corporation makes the following allegations:

A. Credit Acceptance Corporation alleges that Digital Motorworks, Inc. represented that it could provide one file per dealer, but that Digital Motorworks, Inc. could not provide one file for dealer.

B. Credit Acceptance Corporation alleges that Digital Motorworks, Inc. represented that it could provide filtering of data but that Digital Motorworks, Inc. could not provide filtering of data;

C. Credit Acceptance Corporation alleges that Digital Motorworks, Inc. represented that it could support multiple physical locations ("multiple rooftops"), but that Digital Motorworks, Inc. could not do so;

D. Credit Acceptance Corporation alleges that Digital Motorworks, Inc. represented that it had the ability to convert a certain portion of data by January 15, 2007 and the remainder by January 30, 2007.

13. I am familiar with the InfoIQ software as a developer, a user, and a manager of the technical/engineering group which develops and improves this software and attest that:

a.   Contrary to the statement in the Counterclaim, the Product Guide made a part of the agreement provides that that data is transmitted together in one file rather than one file per dealer. This is contained in the product guide attached to my report, and incorporated herein by reference as Exhibit "C". Further, the Software Requirements Specification provided for this contract also uses a file naming convention consistent with one data file rather than one data file per dealer. See Exhibit "C" to this Affidavit, which I incorporate herein.

b.   The InfoIQ software can and does permit filtering of data;

c.   The InfoIQ software can and does handle multiple rooftops for clients;

d.   When an accurate bulk transfer list is provided by the customer, as well as any desired filters, the InfoIQ software can support software extraction on an expedited time schedule.

14. Based upon the way the software works, any representation, if any, which states that InfoIQ can permit filtering, can generate one file per dealer, and can handle multiple rooftops is true.  Further, the software can be used to convert a complete bulk transfer list to InfoIQ in a short period of time.

15. I am aware that Credit Acceptance Corporation contends that Digital Motorworks, Inc. software did not perform appropriately in connection with this project. However, the InfoIQ system can do the data extraction and pull data from the dealer fields, so long as Credit Acceptance Corporation or the dealer provided the necessary information. There is no universal industry rule about which filters a particular dealer might wish to apply to "filter

out" the data from the extraction. There is a variation among dealers about which "fields" of data are used for the data to be extracted. Digital Motorworks, Inc. software can effectively filter data and be used to map dealers. I am aware that the InfoIQ software can map multiple rooftop dealers, based on my experience with the software.

16. In reaching my opinions, I relied upon matters commonly relied upon by one working in my field, including my experience as a computer professional, my formal and on-the-job education, my personal knowledge of the InfoIQ software and its application, my review of the documents mentioned in my report, and my personal understanding through direct experience of how the InfoIQ software operates.

17. The InfoIQ software product provides an exported file of extracted data to the customer in a format set forth in the agreements and product guide. Thus, it is not necessary for me to have any understanding about the use Credit Acceptance Corporation makes of the data at its end through its Credit Processing Approval System (CAPS) in order for me to testify what capabilities InfoIQ provides. The data export from Digital Motorworks that InfoIQ provides, and not the operation of CAPS, is the matter to which I opine.

18. I reached my conclusions based upon my knowledge of the InfoIQ software and of its user guide. My opinions are not based upon conjecture or speculation about what the software can do, but from knowledge derived from direct experience with the software, and from my training, education and experience in dealing with software engineering. The software's features to which I will testify are opinions reached after direct experience with the software and detailed hands-on experience with its use and architecture.

19. My testimony will provide technical confirmation of the features of the InfoIQ software. I am able to testify to those features based upon my specialized technical knowledge of the InfoIQ software. I have both formal training and on-the-job experience to qualify me to testify about the matters in my report. These matters are based upon personal experience in observing the software in operation, and in designing aspects of the software. The testimony will be based upon the actual technical operation of the software. In reaching my opinions, I have applied those techniques utilized by computer software engineers to evaluate the uses of the InfoIQ software. These techniques include: (a) knowledge of the structure of the software through personal involvement in its development; (b) knowledge of the implementation of the software and its features through my experience as Director of Engineering; (c) knowledge of the principles of software engineering through my formal and on-the-job education; (d) observation of the software in action and in development; a detailed familiarity with how the software works; and (e) an awareness of the computer programming industry through my hands-on experience.

20. In addition to being qualified as an expert witness, I am also able to give my first-hand observation of what the InfoIQ software can and does do.

_Kevin Wolf_

Kevin Witt

Subscribed and sworn to before me, a notary public, on this ___ day of December, 2008.

_____
Notary Public

**SEAN HENRY**
Notary Public
STATE OF TEXAS
My Comm. Exp. 01-22-11

**Exhibit A**
**Plaintiff's Rule 26 Designation of Expert**
**Witnesses, Designation of Potential Witnesses,**
**and List of Proposed Exhibits**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DIGITAL MOTORWORKS, INC,          :  Case No.: A08-CA-014-SS
a Delaware corporation            :
          Plaintiff,             :
                           :
    vs.                         :
                           :
CREDIT ACCEPTANCE CORPORATION, a  :
Michigan corporation,             :
          Defendants              :

## PLAINTIFF'S RULE 26 DESIGNATION OF EXPERT WITNESSES, DESIGNATION OF POTENTIAL WITNESSES, AND LIST OF PROPOSED EXHIBITS

**To the Honorable United States District Court:**

    Digital Motorworks, Inc. ("DMI"), Plaintiff in the above cause of action, submits this designation of expert witnesses, designation of potential witnesses, and list of proposed exhibits and shows:

A.    <u>Expert Witnesses</u>

    1.  Digital Motorworks, Inc. designates two employees who may be called upon to provide expert opinion testimony in this matter.

    2.  Kristen Bridgeman is an accountant who will offer evidence on damages. She is designated as an expert witness in the event that any part of her testimony might be deemed opinion evidence requiring such a designation. She will testify to the calculation of the damages due for breach of contract in the amount of $207,874. She may also be called upon to bring this figure forward with interest through the time of trial.  Her contact information is:

                Kristen Bridgeman
                Controller

Digital Motorworks, Inc.
8601 RR 2222, Building I
Suite 400
Austin, TX  78730
(512) 692-1032

3.   Kevin Witt is the Director of Engineering for Digital Motorworks, Inc. He may testify

as to the nature of the InfoIQ™ software in the context of the transaction in issue in

this matter. He may explain the features and operation of the product, and also

address allegations regarding the product contained in the counterclaim. His contact

information is:

Kevin Witt
Director of Engineering
Digital Motorworks, Inc.
8601 RR 2222, Building I
Suite 400
Austin, TX  78730
(512) 692-1032

4.   In addition, Digital Motorworks, Inc. will prove its attorneys' fees through counsel,

in particular Robert H. Nunnally, Jr. Mr. Nunnally is the attorney for Digital Motorworks,

Inc., and will testify on attorneys' fees and related issues, including rates, and time spent

on this case.  Mr. Nunnally may also be called to give testimony to establish that demand

was made.

Mr. Nunnally is licensed to practice law in the State of Texas and is a member of

the State Bar of Texas.  He is a limited partner in the law firm of

Wisener*Nunnally*Gold, LLP.  He has been licensed to practice law since 1984 and

during that time has practiced commercial litigation, including numerous commercial

litigation matters in Dallas County and in Travis County.  He has tried cases to trial in

**Exhibit B**
**Plaintiff's Second Supplemental Designation of**
**Witnesses and List of Proposed Exhibits**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DIGITAL MOTORWORKS, INC, | : | Case No.: A08-CA-014-SS |
| a Delaware corporation | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CREDIT ACCEPTANCE CORPORATION, a | : | |
| Michigan corporation, | : | |
| Defendants | : | |

## PLAINTIFF'S SECOND SUPPLEMENTAL DESIGNATION OF WITNESSES AND LIST OF PROPOSED EXHIBITS

**To the Honorable United States District Court:**

Digital Motorworks, Inc. ("DMI"), Plaintiff in the above cause of action, submits this supplemental designation of witnesses and list of proposed exhibits and shows:

A.   Expert Witnesses

1.   DMI previously designated experts Kristen Bridgeman, Kevin Witt, Robert H. Nunnally, Jr., and Byron Woolley.  These experts are expected to testify on the matters set forth in DMI's original designation of expert witnesses and first supplemental designation of witnesses and list of proposed exhibits.  Reports for each witness have been produced to counsel for Credit Acceptance Corporation ("CAC").

2.   Kristen Bridgeman is expected to testify on the matters set forth in DMI's original designation of expert witnesses and first supplemental designation of expert witnesses and list of proposed exhibits.

3.   Robert H. Nunnally, Jr. is expected to testify as to attorneys' fees and costs, and reasonableness thereof, as set forth in DMI's original designation of expert witnesses

*Digital Motorworks, Inc.'s Second Supplemental Designation of Witnesses*
*and List of Proposed Exhibits*
***Page 1 of 37***

and first supplemental designation of expert witnesses. Mr. Nunnally's expert report shall be supplemented by the updated invoices and invoice summary designated herein and produced to counsel for CAC through DMI's supplemental disclosures.

4. As reported in DMI's original expert designation, Kevin Witt is the Director of Engineering for Digital Motorworks, Inc. He may testify as to the nature of the InfoIQ™ software in the context of the transaction in issue in this matter. He may explain the features and operation of the product, and also address allegations regarding the product contained in the counterclaim. Mr. Witt may also be called upon to address issues regarding the software and inventory systems and interfaces of CAC and CAPS as they relate to issues in the context of this transaction. He may also be called upon to testify as to the general capability of the software, including the capability to do filtering, mapping, multiple rooftops, and 1 file per dealer and a timely conversion. His contact information remains the same.

Digital Motorworks, Inc. reserves the right to ask opinion questions of any witnesses designated by Credit Acceptance Corporation, and to supplement this as permitted by rule and the Court's orders.

B.   Potential Witnesses

Digital Motorworks, Inc. has previously designated potential witnesses. These potential witnesses remain designated and are unchanged by the filing of this second supplemental witness designation and list of proposed exhibits, with the exception of one minor clarification. A previously designated witness, Anne Bamford, has changed her name to Anne Blair. Ms. Blair remains designated as a witness for Digital Motorworks, Inc. Additionally, DMI may call

*Digital Motorworks, Inc.'s Second Supplemental Designation of Witnesses
and List of Proposed Exhibits*
**Page 2 of 37**

# Exhibit C
# Expert Report of Kevin Witt

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DIGITAL MOTORWORKS, INC,          :   Case No.: Case No.: 1:08-cv-0014-SS
a Delaware corporation            :
          Plaintiff,       :
                        :
    vs.                           :
                        :
CREDIT ACCEPTANCE CORPORATION, a :
Michigan corporation,             :
          Defendants       :

Expert Report of **Kevin Witt**

    1. My name, business address, business telephone number, title, and employer are:

| | |
|---|---|
| Name: | Kevin Witt |
| Address: | Digital Motorworks Inc. |
| | 8601 RR 2222 Building I Suite 400 |
| | Austin TX 78730 |
| Phone: | 512-692-1100 |
| Title: | Director of Engineering |
| Employer: | Digital Motorworks Inc. |

    2. My qualifications, including my education and employment background, and a list of all publications I have authored in the past ten years are:

## Overview

I am an enterprise software development leader with architectural, development, and management experience in J2EE and .NET enterprise applications, client/server applications, multi-platform mobile device applications, and embedded applications. I also have extensive experience in leading the development of large-scale business solutions from the perspective of product offerings, custom client focused engagements, and as internally funded I/T projects.